DOUCET, Judge.
The plaintiff-appellant, Ferrell Soileau, instituted this action against Olin Corporation, defendant-appellee, seeking damages for an alleged disabling psychological condition that was allegedly caused by the exposure to phosgene gas while making a delivery to the defendant’s chemical plant in Lake Charles. After a trial, the plaintiff was awarded $865,000.00 by a jury. Subsequently, a new trial was then ordered because of allegations that the jury was tainted by improper influence that could have diminished the jury’s impartiality. The case was retried before a new jury that returned a verdict in favor of the appellant in the sum of $175,000.00. The plaintiff perfected this appeal.
On the morning of March 23, 1979, the appellant was making a delivery for his employer, Southern Pacific Transport Company, to a chemical plant in Lake Charles owned by The Olin Corporation. Mr. Soi-leau entered the plant and was directed to a construction warehouse where he unloaded the supplies in his truck. As he was tendering the bill of lading to the warehouseman for his receiving signature, an alarm sounded in the TDI[1] unit several hundred yards away. Mr. Soileau followed other workers to the front gate of the plant where they milled around for thirty minutes until they were informed that the gas had dissipated. Mr. Soileau testified that as he was running to the front gate he momentarily tasted something bittersweet and that during his next delivery of the day, he became nauseous and dizzy and was forced to stop his truck in order to vomit. Mr. Soileau then returned to his work place with great difficulty.
On this same day, Mr. Soileau visited Dr. Charles White, a physician engaged in the practice of family and industrial medicine in Lake Charles, who conducted an examination that revealed minor respiratory symptoms that are associated with the common cold. After four more visits in a period of ten days, the plaintiff was released to return to work. Mr. Soileau, however, remained convinced that he was afflicted with some ailment associated with the toxic gas exposure so he consulted an attorney. The attorney referred the plaintiff to Dr. Jana Kajmal, a local pulmonary specialist. Dr. Kaimal had the plaintiff hospitalized where he conducted extensive *130 medical tests that revealed no clinically significant physical ailment. When the plaintiff persisted in his complaints of dizziness, fainting and nausea, Dr. Kaimal referred the plaintiff to Mr. Charles Downing, a local psychologist, who administered a psychological profile test.
The plaintiff remained convinced that the source of his ailments were physical so he arranged to visit with pulmonary specialists at the Ochsner Medical Center in New Orleans. After numerous tests conducted by pulmonary specialists and neurologists, no physical basis was detected for Mr. Soi-leau’s symptoms. Mr. Soileau was then referred to Dr. Charles Billings, who is a psychiatrist at Ochsner. This treatment extended over a period of four years and involved over thirty meetings between the patient and the physician. Dr. Billings also suggested that the plaintiff begin consulting a local psychiatrist, so Mr. Soileau then sought treatment from Dr. Edmund Camp, who is a biological psychiatrist.
In the meantime, the plaintiff instituted this lawsuit against Olin for damages caused by his alleged exposure to phosgene gas at their Lake Charles facility. Two lengthy trials ensued. The first trial went before a jury which awarded the plaintiff damages in the sum of $865,000.00. The defendant, after hearing allegations of improprieties, vis-a-vis the jury, moved for a new trial. The substance of these allegations was an attempted bribery of a juror and also improper communications, all of which tainted the jury by diminishing its impartiality. Eventually the plaintiff joined the defendant in its motion and a new trial was conducted. Upon the completion of this trial, the jury awarded the plaintiff damages in the sum of $175,-000.00. The plaintiff perfected this appeal.
The plaintiff assigns three assignments of error. First, that the jury’s damage award is patently inadequate and clearly wrong. Second, that the trial judge was in error when it refused to issue a directed verdict holding that phosgene is an ultra-hazardous chemical. And, third, that the trial court erred in not allowing two lay persons to testify about the effects of phos-gene gas on the central nervous system.
The plaintiff, in his first assignment of error, argues that the jury was clearly wrong in its award sum, which, he contends, is wholly inadequate to compensate the plaintiff for the long-term disabling damages that he allegedly sustained. At the trial, there was extensive medical testimony on behalf of both parties to this ease. The crux of the disability issue was whether the inhalation of phosgene gas can cause a dysfunction in the brain that could have caused the plaintiff’s severe post-trauma neuroses. All of the physicians who actually treated the plaintiff psychologically, testified that in their opinion, the plaintiff’s physical symptoms are caused by a conversion reaction to alleviate anxiety caused by the trauma of the exposure.
Dr. Billings, who conducted the most extensive treatment, stated that this anxiety was caused by the plaintiff’s perception of himself as somehow contaminated and consequently unable to provide for his family. Dr. Billings elaborated further by stating that he believed Mr. Soileau to be sincere in his complaints and that his problems were very real to him. Dr. Billings opined that the prognosis for a recovery was poor and that Mr. Soileau would never again be able to engage in gainful employment.
Dr. Camp testified that an enzyme reaction precipitated by the phosgene exposure caused certain hormone deficiencies which caused the plaintiff’s chronic depression and acute anxiety. Dr. Camp also thought that the prognosis was poor and added that, in his opinion, Mr. Soileau was psychotic. Dr. Camp also opined that Mr. Soi-leau would be unable to ever again engage in gainful employment. Dr. John McCutchen, a neurologist, confirmed the gist of this testimony. In his opinion, the phosgene exposure was a direct cause of certain brain damage which will forever impair the plaintiff in his effort to live a productive life.
In sum, these witnesses on the plaintiff’s behalf, lay persons included, testified that the plaintiff was a well-adjusted, produc *131 tive citizen prior to his alleged exposure to phosgene gas, but that afterwards, he became an anxiety-ridden and physically incapacitated person who no longer is able to work. The medical testimony on the plaintiffs behalf attributes this poor state of the plaintiff to the consequences of exposure to-phosgene gas.
The defendant assembled an impressive and pursuasive line-up of expert witnesses who, in effect, testified that it is physically impossible for phosgene gas exposure to cause brain damage unless the exposure was of great proportions. Dr. Michael Fro-solomo is a biochemical researcher who has conducted extensive research on the effects of phosgene gas exposure. He testified that unless a pulmonary edema develops, which is a gross swelling of the lungs, there can be no serious consequences from an exposure. He stated that damage to the brain or to the central nervous system was a physical impossibility. Dr. Frosolo-mo stated categorically that no other physical consequences result from an exposure except pulmonary disorders. In his opinion, the plaintiff suffered a very mild exposure and that his host of emotional problems are not physically attributable to gas exposure.
Another expert witness to testify on the defendant’s behalf is Dr. Comstock, who is an expert on medical toxology. Dr. Com-stock testified that medical problems resulting from phosgene exposure are limited to the respiratory system. After reviewing the plaintiff's medical records, he found no evidence of a pulmonary edema or any other serious ailment. Dr. Comstock testified that in his opinion, the plaintiffs psychological problems were not caused by exposure to phosgene gas.
In sum, the defendant’s position is that phosgene exposure cannot cause any sort of brain damage or damages to the nervous system and that the plaintiff’s psychological problems cannot be attributed to the alleged exposure at the Olin plant. This position is supported by the evidence which states that only in cases where the victim sustains a pulmonary edema is the possibility of serious brain damage real. And because in this case no such condition developed there can be no brain damage attributable to the alleged exposure.
There are two contradicting versions of the basis of the plaintiff’s ailments. This type of factual contradiction is precisely the situation in which appellate deference to the factual findings at the trial level is appropriate. The duty of appellate courts was set forth in Canter v. Koehring Company, 283 So.2d 716 (La.1973), as follows: “The reviewing court must give great weight to factual conclusions of the trier of fact; where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even though the appellate court may feel that its own evaluations and inferences are as reasonable.” At 724. The reasons for this rule are well known; the superior position of the trier of fact in evaluating the credibility of evidence, and the proper allocation of the trial and appellate functions between the respective courts.
The Louisiana Supreme Court elaborated on this language in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) when it explained that this standard of review requires an appellate court to review the entire record in order to determine the factual basis of the lower court and to further determine that the record establishes that the factual finding is not clearly wrong. After reviewing the voluminous record in this case, we conclude that the jury’s damage award is supported by the record and also is not clearly wrong. Although the plaintiff’s economic specialist testified that a permanent disability would result in the loss of approximately $865,000.00, the jury, after hearing all of the evidence, apparently concluded that the plaintiff was not permanently disabled or that his permanent disability was not caused exclusively by the gas exposure. Either one of these conclusions is supported by the record and not manifestly erroneous. Therefore, the jury’s damage award will not be disturbed on this appeal.
*132 The appellant’s next assignment of error concerns the plaintiffs Motion for a Directed Verdict which was filed after all of the evidence in the case had been presented. The plaintiff unsuccessfully moved for a directed verdict which would state that the defendant was engaged in an ultra-hazardous activity. The trial judge decided to let the jury decide this issue rather than grant the plaintiffs Motion for a Directed Verdict. The plaintiff-appellant contends that the trial court’s denial of this Motion constitutes a reversible error.
A directed verdict can be granted only if the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. Cupit v. Grant, 425 So.2d 847 (La.App. 3rd Cir.1982). We conclude that the trial court was not in error when it denied the plaintiff’s Motion for the Directed Verdict on the issue of ultra-hazardous activity. There was very much contradictory evidence about the physical consequences of exposure to phosgene gas which, in itself, resists the conclusion that reasonable men could not possibly disagree on the degree of the hazard that phosgene gas presents. The motion was properly denied in deference to the submission of this issue to the jury which concluded that Olin was in fact engaged in an ultra-hazardous activity.
Finally, the appellant argues that the trial court should have allowed another victim of phosgene exposure to testify on the effects that it has on the central nervous system. The trial court disallowed this testimony because the witness was not an expert on the central nervous system or on phosgene gas. The trial court was correct in its exclusion of this testimony. Opinion testimony of lay witnesses as a general rule is excluded. Greene v. Wright, 365 So.2d 551 (La.App. 1st Cir.1978).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to the plaintiff-appellant.
AFFIRMED.

. TDI is an abbreviation of Toluene Diisocya-nate, the major ingredient for the manufacture of urethane pumps, which is produced by Olin Corporation. Phosgene gas is the reactant that is combined with the organic component of TAI.